# AMERICAN ARBITRATION ASSOCIATION

| | |
|---|---|
| In the Matter of the Arbitration between ) | |
| ) | |
| C & W Enterprises, Inc. ) | 65 110 Y 00019 06 |
| ) | |
| and ) | |
| ) | MOTION TO DISMISS |
| ) | BASE AND BLOTTER |
| Oglala Sioux Tribe ) | CONTRACT CLAIM |

COMES NOW, respondent/counterclaimant Oglala Sioux Tribe, by and through undersigned counsel, and moves for an order dismissing the Base and Blotter contract claim in the Amended Arbitration Demand of C & W Enterprises. The claims pursued under the Base and Blotter Contract may proceed only if they are not objected to by the respondent, because it has not waived its sovereign immunity under that contract, for this forum. By this motion, the respondent objects to the Base and Blotter claim, and respectfully moves for its dismissal.

The respondent Oglala Sioux Tribe warrants that it informed the counsel for C & W Enterprises beforehand that the respondent intended to file this motion. The Tribe made a significant effort to avoid having to file this motion.

On May 25, 2006, the Tribe sent a Notice of Deposition to C & W Enterprises, Inc., for a deposition of Warren Barse at Pine Ridge, South Dakota to be held on June 16, 2006. All discovery must be completed in this matter by July 10, 2006, under the scheduling order that has been entered. The respondent's notice was a good faith effort to conduct discovery and comply with tight deadlines in this arbitration.

The claimant refused to attend, and stated it would not travel to Pine Ridge for a deposition. No agreement was reached for alternative depositions. In fact, rather than cooperate with discovery, the contractor has requested further concessions from the Tribe in order to continue to adjudicate the Base and Blotter claim. This motion is thus necessary.

This motion is based upon R. 31(b) of the Rules of the American Arbitration Association, the Legal Memorandum of Points and Authorities and Affidavit of Peter Capossela filed herewith, and the pleadings and papers on file herein.

DATED this 23rd day of June, 2006

By: _Peter Capossela_____
Peter Capossela
Attorney at Law
Post Office Box 204
Walterville, Oregon 97489
(541) 896-3472

# AMERICAN ARBITRATION ASSOCIATION

| | | |
|---|---|---|
| In the Matter of the Arbitration between | ) | |
| | ) | |
| | ) | 65 110 Y 00019 06 |
| C & W Enterprises, Inc. | ) | |
| | ) | |
| and | ) | AFFIDAVIT OF |
| | ) | PETER CAPOSSELA |
| | ) | |
| Oglala Sioux Tribe. | ) | |

I, Peter Capossela, under penalty of perjury, hereby state and affirm as follows:

1.   That I serve as counsel for respondent / counterclaimant Oglala Sioux Tribe in the above-captioned matter.

2.   The Oglala Sioux Tribe served a Notice of Deposition on C & W Enterprises, through counsel, on May 25, 2006. The notice was served in good faith, and for no improper purpose.

3.   C & W Enterprises refused to produce the deponent or documents requested. This matter was discussed before the arbitrator at a hearing on May 4, 2006, who instructed the parties to attempt to negotiate a resolution to the deposition. Negotiations took place, and were unsuccessful.

4.   The Tribal leaders hoped to have a speedy resolution of the Base and Blotter contract dispute on the merits before the American Arbitration Association. Various factors, including the rural location of the Reservation, the requirements of the federal Davis Bacon Act, and the legal status of Indian Tribes, put upward pressure on the cost of construction projects on the Reservation. Accordingly, the Tribe was prepared to litigate the Base and Blotter claims on the merits before the American Arbitration

Association even though the Association lacks jurisdiction, in order to resolve this dispute and continue the effort to make the Reservation a business-friendly environment for contractors.

5.     The Tribe attempted to avoid the filing of this motion, through negotiations with counsel. The filing of this motion was delayed so negotiations could continue in recent days.

Peter Capossela

SUBSRIBED and SWORN to Before Me
this 24 day of June, 2006.

Notary Public

OFFICIAL SEAL
ANDREW W ALLEN
NOTARY PUBLIC-OREGON
COMMISSION NO. 403452
MY COMMISSION EXPIRES MARCH 9, 2010

My Commission Expires   03-09-2010

AMERICAN ARBITRATION ASSOCIATION

In the Matter of the Arbitration between   )
   )
   )       65 110 Y 00019 06
C & W Enterprises, Inc.         )
   )
and             )     **LEGAL MEMORANDUM OF**
   )     **POINTS AND AUTHORITIES**
   )     **IN SUPPORT OF MOTION TO**
Oglala Sioux Tribe.        )     **DISMISS BASE AND BLOTTER**

Indian Tribes enjoy common law immunity from suit. *Santa Clara Pueblo v. Martinez*, 436 U.S. 49, 58 (1977), *Weeks v. Oglala Sioux Housing Authority*, 797 F.2d 668, 670-671 (8th Cir. 1986). As a result of sovereign immunity, no contract action may be entertained against an Indian Tribe, without an explicit waiver of sovereign immunity from the Tribe. *Kiowa Tribe of Oklahoma v. Manufacturing Technologies, Inc.*, 523 U.S. 751, 760 (1998), *American Indian Agriculture Credit Consortium, Inc. v. Standing Rock Sioux Tribe*, 780F.2d 1374, 1377-1378 (8th Cir. 1985).

In the present case, the Multi-Project Gravel, Manderson Road and Cuny Table contracts contain waivers of immunity before the American Arbitration Association. For this reason, the claims under those contracts may properly be adjudicated before the Association. *See Rosebud Sioux Tribe v. Value Construction Co. of South Dakota, Inc.*, 50 F.3d 560, 562 (8th Cir. 1995)

The Base and Blotter contract, however, contains different language. *See* Exhibit A, attached hereto. In the Base and Blotter contract, the Tribe waived its immunity only for adjudication in Tribal Court. *Id* The applicable language is found in section 9 of the contract,

1

The Oglala Sioux Tribal Court will resolve all disputes arising under this contract. Tribal Substantive (sic) laws regarding contracts shall apply to such disputes. If no tribal substantive laws regarding contracts exist, then the Tribal Court will apply South Dakota law as a guide.

Exhibit A, p. 3.

"A waiver of sovereign immunity 'cannot be implied but must be unequivocally expressed.'" *Santa Clara Pueblo v. Martinez*, 436 U.S. at 58 (cites omitted). As stated above, the Base and Blotter contract contains a dispute resolution provision for Tribal Court only. Exhibit A. There is no explicit waiver for any other forum.

Consequently, the American Arbitration Association lacks jurisdiction over the Base and Blotter dispute. The Base and Blotter claim must be dismissed.

Sovereign immunity may be raised at any time in a proceeding. *Hagen v. Sisseton-Wahpeton Community College*, 205 F.3d 1040, 1043-1044 (8th Cir. 2000). Accordingly, this motion is timely, and meritorious.

As stated in its motion, the Tribe tried to avoid this. The Tribe attempted in good faith to adjudicate the claimant's allegations promptly and in an orderly fashion. Thus, the Tribe initially did not object to the inclusion of the Base and Blotter contract in the arbitration demand.

In fact, the Tribe attempted to move along the process of adjudicating the Base and Blotter claim. At the preliminary hearing in this matter held on April 9, the Tribe agreed to continue the proceeding in Sioux Falls for a full-day hearing to present its position and finalize the scheduling order. Four Tribal representatives traveled from Rapid City and legal counsel traveled from Walterville, Oregon, to Sioux Falls, for the May 4 hearing.

The Tribe fully cooperated in the development of a scheduling order for all claims, including Base and Blotter. When C & W Enterprises filed a revision to the Base and Blotter claim in the Amended Arbitration Demand after the deadline, the Tribe did not object. *See* Letter of Russell Janklow to Mathew Halteman, AAA, with enclosure, dated May 19, 2006.

The Tribe also cooperated in discovery, compiling extensive documents and producing them for the contractor. There were no objections by the Tribe to any part of the claimant's extensive discovery request. The Tribe supplied all documents requested, sending many documents from Oregon to South Dakota to facilitate the process. The Tribe exceeded its obligations in discovery and incurred extra costs, to keep the process moving.

For its part, in negotiating the scheduling order, C & W Enterprises took borderline frivolous positions. "Claimant estimates that the hearings should take place within 2 weeks..." *Letter of Matthew Halteman*, AAA, February 10, 2006. Although the claimant has argued for unrealistic time frames, there is an ambitious but realistic schedule in place. See Preliminary Hearing and Scheduling Order of May 8, 2006. However, at this point, the claimant is refusing to cooperate with discovery. The claimant's conduct jeopardizes this entire proceeding.

The claimant refused to attend a properly noticed deposition for June 16, 2006. Exhibit B. Per the directive of the arbitrator, the Tribe attempted to negotiate for the appearance of deponents and production of documents. No agreement was reached. The contractor simultaneously pushed for a prompt hearing, and refused to cooperate with

discovery. It has become virtually impossible for the Tribe, the respondent in a multi-million dollar arbitration claim, to defend itself against the claim.

For these reasons, the Tribe moves for dismissal of the Base and Blotter claim. The established legal doctrine of sovereign immunity and applicable case law require that this claim be dismissed. *Kiowa Tribe of Oklahoma v. Manufacturing Technologies, Inc.*, 523 U.S. at 760, *American Indian Agriculture Credit Consortium, Inc. v. Standing Rock Sioux Tribe*, 780 F.2d at 1377-1378. An order should be entered accordingly.

RESPECTFULLY SUBMITTED this 23rd day of June, 2006

By: ___Peter Capossela___
Peter Capossela
Attorney at Law
Post Office Box 204
Walterville, Oregon 97489
(541) 896-3472


Attorney for Oglala Sioux Tribe

# SUBCONTRACT

The subcontract is made and entered into on this 13TH day of AUGUST 2003, by and between the Oglala Sioux Tribe Transportation Department, P.O. Box 335, Pine Ridge, South Dakota 57770 (hereinafter called "Tribe") and C & W Enterprises Incorporated, P.O. Box 84826, Sioux Falls, South Dakota, 57113 (hereinafter called "Subcontractor").

For and consideration of the mutual promises set forth below, the parties agree to the following terms and conditions:

1.  CONTRACT PRICE AND BID SCHEDULE

    Transportation agrees to subcontract with the Subcontractor for the 35, 41, 50, 115-10) 1) Base & Blotter Project for the contract amount of $1,972,029.28 in accordance with the attached billing schedule incorporated herein be reference. This schedule is based on unit pricing, and the parties acknowledge payment will vary depending on actual quantifies installed. Unit prices proved in the bid schedule incorporated herein be reference include bond and Tribal TERO Fee of 4% of the contract amount.

2.  PROJECT COMPLETION DATE

    The project shall be substantially completed by 90 working days or the scheduled liquidation provisions will be in effect, a absent extension. Substantial completion is the stage in the progress of the work when the work may be utilized for its intended use. The Subcontractor agrees that for and in consideration of the unit price as set forth in the attached and incorporated herein by reference bid schedule, it shall faithfully carry out the duties to complete the Project in a timely manner.

3.  DELAY AND EXTENSION OF TIME

    If the Subcontractor is delayed at any time in the commencement or progress of the work be an act or neglect of the Oglala Sioux Tribe or Transportation, or of an employee of either, or of a separate contractor employed by either, or by changes ordered in the work, or by labor disputes, fire, unusual delay in deliveries, unavoidable casualties, weather, or other causes beyond the Subcontractor's control, or by delay authorized by the Oglala Sioux Tribal or Transportation pending litigation, arbitration, or mediation, or by other causes which reasonably justify delay, then the contract time shall be extended by a reasonable amount of time under the circumstances.

4.    PERFORMANCE PAYMENT BOND

The subcontractor agrees that it will provide a Performance
Payment bond for the contractor amount to the Oglala Sioux
Tribe upon execution of this subcontract.

5.    CONTRACTOR DOCUMENTS

To the extend, any such requirements are not contrary to
the provisions of this subcontract, the Subcontract agrees
to proceed in accordance with the 1999 Oglala Sioux Tribal
Employment Rights Ordinance FHY Standard Specifications for
the Construction of Roads and Bridges on Federal Highway
Projects, FP-96, the OST Transportation Code, including
supplemental specifications contained in Section C, special
contract requirements in Section H of the Contract and
plans, and any other requirements contained in the contract
documents.

6.   CLAIMS FOR CONCEALED OR UNKNOWN CONDITIONS

If conditions are encountered at the site which are (1)
subsurface or otherwise concealed physical conditions which
differs materially for those indicated in the contract
documents or (2) unknown physical conditions of an unusual
nature, which differ materially from those ordinarily found
to exist and generally recognized as inherent in
construction activities of the character provided for in
the contract documents, then notice by the observing party
shall be given twenty-one (21) days after first observance
of the conditions.  The parties shall promptly investigate
such condition and, if the conditions differ materially and
cause an in increase in the Subcontractor's cost or time
required for performance of any portion of the work there
shall be an equitable adjustment through change order in
the contract sum or contract time, or both.  The Oglala
Sioux Tribal Council or Executive Committee must approve
all change orders before they become legal and binding on
the parties.  If the parties cannot agree on an adjustment
in the contract sum or contract time, the adjustment shall
be subject to further proceedings as set forth in the
Dispute Resolution procedures as set for in Paragraphs 9
and 10.

7. **WRITTEN CHANGE ORDER**

A change order is a written instrument signed by both the authorized reprehensive or Transportation and the Subcontractor, stating their agreement upon the following:

    a.   A change in the work;

    b.   The amount of the adjustment, if any, in the contract sum; and

    c.   The extent of the adjustment, if any, in the contract time.

8. **PAYMENT**

Transportation shall make bi-weekly progress payments. Payments shall be made on the 15TH and last day of each month. Final payment, constituting the entire unpaid balance of the contract sum, shall be made by Transportation to the Subcontractor when the contract has reached final completion.

9. **DISPUTE RESOLUTION**

The Oglala Sioux Tribal Court will resolve all disputes arising under this contract. Tribal Substantive laws regarding contracts shall apply to such disputes. If no tribal substantive laws regarding contracts exist, then the Tribal Court will apply South Dakota Law as a guide.

10. **ALTERNATIVE DISPUTE RESOLUTION**

The parties agree to bring any and all claims in the first instance to the Oglala Sioux Executive Committee for non-binding mediation presided over by a mutually agreed upon mediator. If mediation fails, then the aggrieved party may initiate a civil action in the Oglala Sioux Tribal Court, as provided in Paragraph 9, within thirty-days (30) after the date mediation is terminated by the Mediator.

11. **ASSIGNMENT OF SUBCONTRACTOR**

This Subcontract may not be assigned in whole or in part, to any other party without the express written consent of the Oglala Sioux Tribe.

12.   DURATION

Payments under this contract will not be made for work performed until after the Oglala Sioux Tribe receives funds from the Federal Government to complete the work items contained in this subcontract. If no Federal Funds are obtained by the tribe within six (6) months from the date of execution of the contract by the Tribe and Subcontractor, then this agreement will terminate by its own terms. Otherwise, this subcontract will terminate upon completion of the project described in Paragraphs 1 and 2.

13.   ENTIRETY OF CONTRACT

Both parties agree that this written contract constitutes the entire contract between the parties and there are no other contracts or agreements either written or oral, governing the parties relationship.

_9/02/03_
DATE

C & W Enterprise Incorporated
P.O. Box 84826
Sioux Falls, South Dakota 57118

_8/18/03_
DATE

JOHN W. STEELE, President
Oglala Sioux Tribe
P.O. Box 2070
Pine Ridge, South Dakota 57770

_8/18/03_
DATE

RHONDA J. TWO EAGLE
Secretary
Oglala Sioux Tribe
P.O. Box 2070
Pine Ridge, South Dakota 57770

| | |
|---|---|
| In the Matter of the Arbitration between ) | |
| ) | |
| ) | 65 110 Y 00019 06 |
| C & W Enterprises, Inc. ) | |
| ) | NOTICE OF TAKING OF |
| and ) | DEPOSITION OF WARREN |
| ) | BARSE, PRINCIPAL OWNER/ |
| ) | OPERATOR OF CLAIMANT, |
| Oglala Sioux Tribe ) | AND FOR PRODUCTION OF |
| | DOCUMENTS |

To the parties who have appeared in the above-entitled cause of action and their attorneys of record:

YOU ARE NOTIFIED, that on June 16, 2006, at 9:00 a.m., the respondent in this action will take the oral deposition of Warren Barse, principal owner/operator of claimant C & W Enterprises, Inc., at the office of the Oglala Sioux Tribe Department of Water Maintenance and Conservation, Highway 18, Pine Ridge South Dakota 57770 (one mile east of Pine Ridge Village on Highway 18). The deposition will continue from day to day until completed.

Deponent is required to produce at the deposition the following documents:

1.      Certificate of Degree of Indian Blood.

2.      Federal income tax returns of C & W Enterprises, Inc., for the years 2001-2005.

3.      Copies of all construction contracts for work performed during the years 2002-2005.

4. Copies of all documents relating to claims made against bonds issued to claimant, for all work performed during the years 2002-2005.

5. All professional licenses held by claimant during the years 2002-2005.

6. All documents relating to the sale of equipment, as alleged in paragraph 71 of the Amended Arbitration Demand of C & W Enterprises, on file herein.

7. All documents relating to payment bond claims, as alleged in paragraph 79 of the Amended Arbitration Demand of C & W Enterprises, on file herein.

DATED this 25th day of May, 2006

By: _Peter Capossela_
Peter Capossela
Attorney at Law
Post Office Box 204
Walterville, Oregon 97489
(541) 896-3472

Attorney for Oglala Sioux Tribe

Certificate of Service

I hereby state that on this date I deposited a true copy of the afore with Federal Express courier with proper fee paid to-

A. Russell Janklow
Shannon Falon
Johnson, Heidepriem, Miner, Marlow & Janklow
431 N. Phillips Avenue  Suite 400
Sioux Falls, South Dakota 57101

Matthew Halteman
American Arbitration Association
13455 Noel Road  Suite 1750
Dallas, Texas 75240

Dated this 24th day of June, 2006

**AMERICAN ARBITRATION ASSOCIATION**
**CONSTRUCTION INDUSTRY ARBITRATION RULES**

| | |
|---|---|
| C & W Enterprises,<br><br>          Claimant,<br><br>vs.<br><br>Oglala Sioux Tribe.<br><br>          Respondent. | **BRIEF IN RESPONSE TO RESPONDENT'S MOTION TO DISMISS BASE AND BLOTTER CONTRACT CLAIM** |

COMES NOW the Claimant C&W Enterprises, by and through its undersigned counsel, and hereby submits this Brief in Response to Respondent's Motion to Dismiss Base and Blotter Contract Claim. By participating in this arbitration and agreeing to litigate the Base and Blotter claim on the merits in this forum, the Oglala Sioux Tribe has waived its sovereign immunity, and thus, the Tribe's Motion to Dismiss should be denied.

<u>**BACKGROUND**</u>

On January 17, 2006, C&W filed an arbitration demand with the American Arbitration Association seeking to arbitrate its disputes with the Oglala Sioux Tribe concerning four contracts: Multi-Gravel Contract, Manderson to Wounded Knee Contract, Route 2 & 41 Cuny Table Contract, and the Base and Blotter Contract. Each of the contracts contained an explicit waiver of tribal sovereign immunity, and three of the contracts designated the American Arbitration Association as the proper forum to resolve disputes. Unlike the other three contracts, the Base and Blotter Contract designated the Oglala Sioux Tribal Court as the proper forum to resolve disputes. In the interest of efficiency and expediency, C&W brought its claims under all four contracts in this action before the American Arbitration Association, and, obviously seeing the benefits of litigating all claims in a single action, the Tribe did not object.

For the past six months, the parties have proceeded to litigate this dispute, including the Base and Blotter contract. During this time, the Tribe has actively participated in the case. The Tribe filed an answer and did not raise sovereign immunity as a defense. In its original answer, the Tribe asserted a counterclaim against C&W on the Base and Blotter contract for $111,124. The Tribe subsequently filed an amended answer and increased its counterclaim on the Base and Blotter contract to $1,784,875.00. The Tribe filed a previous motion to dismiss certain portions of C&W's claim on the grounds that such claims were barred by sovereign immunity, but the Tribe elected not to assert sovereign immunity under the Base and Blotter contract. In fact, with respect to sovereign immunity on this contract, the Tribe stated the following in its legal memorandum:

> [i]n the Base and Blotter contract, the limited waiver of sovereign immunity extends only to the Oglala Sioux Tribal Court. The Tribe has not objected to the claimant's inclusion of the Base and Blotter claim in the Arbitration Demand, however, for the sake of expediency in resolving the dispute on its merits.

See Oglala Sioux Tribe's Legal Memorandum of Points and Authorities in Support of Motion to Dismiss, p.3, dated May 10, 2006. Additionally, the Tribe has participated in preliminary hearings, filed a position paper as ordered by the arbitrator and served discovery requests.

After six months of litigation, the Tribe has now chosen to assert sovereign immunity as a defense to the Base and Blotter contract allegedly because C&W did not comply with a notice of deposition served upon C&W President Warren Barse. The Tribe contends that C&W is "refusing to cooperate with discovery" and that C&W's allegedly improper conduct "jeopardizes this entire proceeding." See Legal Memorandum of Points and Authorities in Support of Motion to Dismiss Base and Blotter, p. 3. The Tribe, however, grossly misstates the facts surrounding C&W's actions in this arbitration.

2

From the very inception of this arbitration, and even prior thereto, C&W has been exceedingly accommodating and cooperative with the Tribe in relation to exchanging information and attempting to schedule Mr. Barse's deposition. On December 7, 2006, the parties held a meeting on the Pine Ridge Indian Reservation to discuss potential resolution of this matter. At that time, C&W provided the Tribe with copies of its documents relative to its claims on three of the four contracts at issue in this arbitration: Multi-Gravel Contract, Manderson to Wounded Knee Contract, and Route 2 & 41 Cuny Table Contract. Thus, the Tribe was in possession of a substantial portion of C&W's documents over a month before the arbitration was even filed.

C&W promptly provided the remainder of its documents to the Tribe well in advance of the deadline set by the May 8, 2006 scheduling order. Pursuant to the terms of the scheduling order, C&W had until May 30, 2006 to exchange relevant documents with the Tribe. On April 20, 2006, weeks prior to the scheduling order even being entered, C&W copied all of the relevant documents not previously produced to the Tribe and sent the same to the Tribe's counsel via FedEx. *See* Aff. of Counsel, Ex 1. C&W provided these copies at its own expense, without the Tribe requesting them, and did so over a month before the deadline set by the arbitrator.

The Tribe, however, failed to respond in-kind. The Tribe did not provide *any* documents to C&W by the May 30, 2006 deadline. C&W had requested certain documents from the Tribe on April 20, 2006. *See* Aff. of Counsel, Ex. 1. C&W requested additional documents on April 24, 2006 and again on May 17, 2006. *See id.*, Exs. 2 & 3. Despite C&W's requests for documents from the Tribe and the scheduling order setting the May 30, 2006 deadline, C&W received no documents from the Tribe by that time. Furthermore, the Tribe failed to even contact C&W to request additional time to complete its document production or share any

problems it was encountering in responding to the same. *See* Aff. of Counsel, ¶ 2. The deadline simply passed without C&W hearing anything from the Tribe regarding the outstanding document requests.

Having heard nothing from the Tribe, C&W sent a letter to the Tribe on June 1, 2006, inquiring about the documents. *See* Aff. of Counsel, Ex. 4. In its letter, C&W pointed out that, pursuant to the scheduling order, May 30, 2006 was the deadline for document production and the parties were to agree by June 7, 2006 whether additional discovery was necessary. C&W further stated that in order to meet this June 7 obligation, C&W needed access to the Tribe's documents as soon as possible. *Id.*

The Tribe finally sent a response to C&W's discovery requests on June 2, 2006. *See* Aff. of Counsel, Ex. 5. The response stated that the documents would be available at the Little Print Shop in Rapid City, South Dakota for review by C&W four days later on June 6, 2006 and that they would remain there through June 9, 2006. *Id.* Because of the very short notice given to C&W's counsel regarding the planned production of documents, counsel was not able to rearrange their schedule and travel the 350 miles to Rapid City to review the documents. Counsel for C&W was in trial the entire week of June 5, 2006. *See* Aff. of Counsel, ¶ 3. Since C&W was unable to travel to Rapid City, C&W wrote to the Tribe's counsel on June 5, 2006, and requested that the Tribe arrange to have the documents copied by the Little Print Shop and shipped to Sioux Falls. *See* Aff. of Counsel, Ex. 6. This was eventually accomplished, and C&W received the documents the week of June 12, 2006. Unlike the courtesy C&W had previously extended to the Tribe, the Tribe did not bear the cost of reproducing or shipping the documents to C&W. C&W cannot agree with the Tribe's assertion that it "exceeded its obligations in discovery and incurred extra costs." *See* Legal Memorandum of Points and

Authorities in Support of Motion to Dismiss Base and Blotter, p. 3. Clearly, as the Tribe's belated document production establishes, the Tribe failed to timely honor its discovery obligations.

At the end of May, despite its failure to provide C&W with its documents and after having been in possession of C&W's documents for over a month, the Tribe chose to serve additional discovery upon C&W. On May 25, 2006, the Tribe served interrogatories on C&W and a notice to take Warren Barse's deposition. Prior to serving the notice of deposition, the Tribe's counsel made no effort whatsoever to contact C&W's counsel to inquire as to potential dates that counsel and Mr. Barse were available. *See* Aff. of Counsel, ¶ 4. The Tribe simply picked a date that was convenient for it and its counsel. Furthermore, the Tribe elected to have the deposition take place on the Pine Ridge Indian Reservation, rather than in Sioux Falls, South Dakota, the location of Mr. Barse's residence and the venue set for the arbitration hearing.

C&W's counsel wrote to the Tribe's counsel on June 1, 2006, regarding the notice of deposition. *See* Aff. of Counsel, Ex. 4. C&W's counsel raised no objection to the Tribe taking the deposition of Mr. Barse. *Id.* In fact, C&W's counsel had been offering to allow the Tribe to depose Mr. Barse for months. Shortly after instituting the arbitration, C&W's counsel set the Tribe's counsel an email offering Mr. Barse for deposition and asking that the Tribe's attorney simply contact him when he wanted to set it up. *See* Aff. of Counsel, ¶ 5. C&W's counsel made the same offer verbally on the telephone to the Tribe's counsel after the April 11, 2006 preliminary hearing. *See* Aff. of Counsel, ¶ 6. The first response C&W received to these offerings was the May 25 notice of deposition.

As stated, C&W did not object to the Tribe taking Mr. Barse's deposition. And while the date was not convenient for C&W's counsel, in an effort to be cooperative and move the case

forward, C&W agreed to the date selected by the Tribe as well. *See* Aff. of Counsel, Ex. 4. The only accommodation that C&W requested was that the deposition occur in Chamberlain, South Dakota instead of the Pine Ridge. *See id.* Given that Mr. Barse resides in Sioux Falls and that the arbitration proceeding was set in Sioux Falls, C&W felt strongly that Mr. Barse's deposition should take place in Sioux Falls. *Id.* Nonetheless, in an attempt to reach a compromise, C&W suggested Chamberlain as an alternative location. *Id.* It is approximately 350 miles from Sioux Falls to Pine Ridge, but Chamberlain is approximately half way between the two.

The Tribe rejected C&W's offer to have the deposition take place in Chamberlain and instead suggested that the deposition take place in Rapid City. *See* Aff. of Counsel, Ex. 7. Unfortunately, like Pine Ridge, Rapid City is approximately 350 miles from Sioux Falls, and C&W's counsel could not make the trip at the time stated in the notice. C&W's counsel explained that he was in depositions all day in a products liability case the day prior to the noticed deposition. *Id., Ex. 8.* C&W's counsel informed the Tribe that he would be willing to travel to Chamberlain in the early morning hours of June 16, 2006, but he would not be able to drive all the way to Pine Ridge that morning. *Id.* In response, the Tribe merely reiterated its position and argued that it was not "unduly burdensome" for C&W to travel 350 miles to attend a deposition that it had absolutely no input into scheduling. *Id.* The Tribe apparently did not comprehend that in order for C&W to appear in either Pine Ridge or Rapid City at 9:00 a.m. on June 16, 2006, C&W's counsel would have had to either make the near six hour trip after completing two long days of deposition on June 14 & 15, 2006 or leave Sioux Falls before 3:00 a.m. on the morning of June 16, 2006. Admittedly, C&W's counsel was not willing to do either. *Id.*

A few days later on June 12, 2006, C&W's counsel emailed the Tribe's counsel and asked that he provide dates in the month of July that he would be available to depose Mr. Barse. *See* Aff. of Counsel, Ex. 9. The Tribe's counsel responded via email on June 19, 2006, and threatened to file a motion to dismiss the Base and Blotter contract on the grounds of sovereign immunity because of C&W's failure to honor the May 25, 2006 deposition notice. *Id.*, Ex. 10. The Tribe's counsel went on to state that the Tribe would forgo filing of the motion if Mr. Barse would agree to appear for his deposition in Pine Ridge, South Dakota on July 14 and comply with all other discovery requests. *Id.*

On June 21, 2006, C&W's counsel responded that C&W would be willing to have Mr. Barse's deposition taken on July 14, 2006 in either Chamberlain or Pierre, South Dakota. *See* Aff. of Counsel, Ex. 11. C&W's counsel expressed his grave concern about the Tribe's threat to assert sovereign immunity if its demands were not compiled with and what such a threat meant for the future of the entire proceeding. *Id.* C&W requested that if the parties move forward, C&W would like the Tribe to produce a written assurance that the Tribe has or is waiving its immunity on the Base and Blotter contract. *Id.* The Tribe's counsel responded on June 21, 2006, indicating that the Tribe refused to produce any written assurances of its waiver of sovereign immunity and that it would proceed to file its motion to dismiss unless Mr. Barse agreed to come to Pine Ridge for his deposition. *Id.*, Ex. 12. On June 22, 2006, C&W's counsel expressed his dismay at the Tribe's position and reiterated his offer to make his client available for deposition at Chamberlain, South Dakota on July 14, 2006. *Id.* The Tribe filed this Motion to Dismiss Base and Blotter Contract Claim on June 23, 2006.

C&W acknowledges the well-established principle that Indian tribes, such as the Oglala Sioux Tribe, possess sovereign immunity from suit. *See Rosebud Sioux Tribe v. A&P Steel, Inc.,* 874 F.2d 550, 552. (8th Cir. 1989). As the Eighth Circuit has recognized, "sovereign immunity operates essentially as a party's possible defense to a cause of action" and it may be waived. *See In re Prairie Island Dakota Sioux,* 21 F.3d 302, 304 (8th Cir. 1994). The Eighth Circuit has indicated, in the context of a bankruptcy proceeding, that active participation in the litigation and belated assertion of sovereign immunity are factors relevant to the issue of waiver. *See Rose v. United States Dep. of Educ.,* 187 F.3d 926, 930 n. 7. (8th Cir. 1999) (citation omitted). C&W contends that by actively participating in this arbitration for the past six months and filing a more than $1.7 million dollar counterclaim against C&W on the Base and Blotter Contract, the Tribe has waived its sovereign immunity and the motion to dismiss should be denied.

In support of its contention that it can raise sovereign immunity at this stage of the proceeding, the Tribe cites *Hagen v. Sisseton-Whapeton Community College,* 205 F.3d 1040 (8th Cir. 2000). Its reliance on *Hagen,* however, is misplaced. Unlike in the instant case, in *Hagen,* the tribe failed to appear and defend against the suit. *Id.* at 1042. Instead the tribe chose not to answer the complaint and default judgment was entered against the tribe on liability. *Id.* The trial court then proceeded to hold a jury trial on the issue of the plaintiff's damages, and prior to the court entering judgment on the jury's verdict, the tribe entered an appearance in the action and moved to dismiss the case on sovereign immunity grounds. *Id.* Thus, the first time that the tribe entered an appearance in the case, the tribe asserted its sovereign immunity. The Eighth Circuit ruled that a wavier of sovereign immunity cannot be implied from the tribe's earlier

failure to appeal in the action and thus because the tribe had not waived its sovereign immunity the case must be dismissed. *Id.* at 1043.

In this case, the Tribe has appeared in this action. As stated above, the Tribe filed an answer and did not raise sovereign immunity as a defense. The Tribe likewise failed to raise sovereign immunity in its amended answer and chose to assert a counterclaim on the Base and Blotter contract for $1.7 million. The Tribe has even gone so far as to bring a previous a motion to dismiss certain portions of C&W's claim on the grounds that such claims are barred by sovereign immunity, but elected not to assert sovereign immunity under the Base and Blotter contract at that time. In fact, in its legal memorandum, the Tribe affirmatively stated that it had not objected to Base and Blotter being included in the arbitration. *See* Oglala Sioux Tribe's Legal Memorandum of Points and Authorities in Support of Motion to Dismiss, dated May 10, 2006. These actions on behalf of the Tribe clearly indicate a waiver of tribal sovereign immunity and a desire to have the Base and Blotter contract dispute decided on its merits.

Other courts have concluded that sovereign entities such as tribes and states can waive their sovereign immunity by actively participating in litigation. In *SDDS, Inc. v. State of South Dakota,* 225 F.3d 970, 973 (8th Cir. 2000), the Eighth Circuit discussed the companion concept of a state's sovereign immunity in federal court under the Eleventh Amendment and indicated that "a state may waive its Eleventh Amendment immunity through its conduct. Courts have inferred a waiver when the State has made a general appearance in federal court and defended a lawsuit on the merits." (citation omitted); *see also In re Bliemeister,* 296 F.3d 858, 860 (9th Cir. 2002) (A state's participation in litigation brought against it may result in waiver of immunity if that participation is incompatible with an intent to preserve is sovereign immunity.); *Hill v. Blind Indus. And Servs.,* 179 F.3d 754, 759-60 (9th Cir. 1999) (Eleventh Amendment immunity waived

where defense not raised until opening day of trial); *Unix System Laboratories , Inc. v. Berkeley Software Design, Inc.,* 832 F.Supp. 790, 801 (D.N.J. 1993) (stating that where a state is an affirmative participant in litigation it waives its defense of sovereign immunity). With respect to tribal sovereign immunity, the Ninth Circuit has held that a tribe waives it sovereign immunity by intervening in a lawsuit. *See United States v. State of Oregon,* 657 F.2d 1009 (9th Cir. 1982).

C&W suggests that this court should follow the reasoning adopted by the Arkansas Supreme Court in *Arkansas Game & Fish Comm'n v. Lindsey,* 771 S.W.2d 769 (Ark. 1989). There the court held that by voluntarily entering an appearance and seeking affirmative relief, the state waived its sovereign immunity from suit. The court went on to state that while the state was under no obligation to appear and defend, upon voluntarily doing do, it submitted to the judgment entered by the court. The same can be said of the Tribe in this case.

The Tribe was not obligated to defend the Base and Blotter contract in this arbitration. It could have chosen to enforce the forum selection clause in the contract calling for the dispute to be resolved by the Oglala Sioux Tribal Court, but it did not. The Tribe instead chose to reap the benefits all having all four contracts decided in a single forum, and the parties proceeded with this arbitration with that understanding. Now, after six months of time and expense, the Tribe has apparently changed its mind and is attempting to force C&W to start its case over before the Oglala Sioux Tribal Court. In essence, the Tribe is contending that whenever it is unhappy with the way this arbitration is progressing, it has the right to pull the plug and have the Base and Blotter Claim dismissed. Such a result is unjust, and such tactics should not be tolerated. C&W respectfully requests that the Tribe's motion to dismiss be denied.

At a minimum, the motion should be denied to the extent that the Tribe has asserted its counterclaim against C&W. As stated, the Tribe has filed a $1.7 million dollar counterclaim

against C&W on the Base and Blotter contract. As the Eighth Circuit has directed, tribes waive sovereign immunity as to claims defendants may assert arising out of the same transaction or occurrence which is the subject matter of the tribe's suit. *See Rosebud Sioux Tribe v. A&P Steel, Inc.,* 874 F.2d 550, 552-53 (8th Cir. 1989). Courts have similarly ruled that filing a counterclaim in response to a lawsuit constitutes affirmative action resulting in a waiver of sovereign immunity. *See Koehler v. Iowa College Student Aid Commission,* 204 B.R. 210, 220-221 (D. Minn. 1997). Therefore, the Tribe waived its sovereign immunity by filing its counterclaim seeking damages from C&W on the very contract that it now wishes to have dismissed from this case.

WHEREFORE, C&W Enterprises respectfully requests that the Oglala Sioux Tribe's Motion to Dismiss Base and Blotter Contract Claim be denied.

Dated this ____10ᵗʰ____ day of July, 2006.

JOHNSON, HEIDEPRIEM, MINER,
MARLOW & JANKLOW, LLP



A. Russell Janklow
Shannon Falon
431 North Phillips Avenue, Suite 400
P.O. Box 1107
Sioux Falls, SD 57101-1107
(605) 338-4304

*Attorneys for the Plaintiff*

11

## CERTIFICATE OF SERVICE

The undersigned hereby certifies that a true and correct copy of **Brief in Response to Respondent's Motion to Dismiss Base and Blotter Contract Claim** was served via email and first class mail, postage prepaid, upon the following:

Peter Capossela
P.O. Box 204
Walterville, Oregon 97489

*Attorney for the Oglala Sioux Tribe*

on this 10th day of July, 2005.

A. Russell Janklow

| | |
|---|---|
| C & W Enterprises, <br><br> Claimant, <br><br> vs. <br><br> Oglala Sioux Tribe. <br><br> Respondent. | **AFFIDAVIT OF COUNSEL** |

STATE OF SOUTH DAKOTA )
                            :ss
COUNTY OF MINNEHAHA )

A. Russell Jankow, being first duly sworn upon his oath, deposes and states:

1. I am one of the attorneys representing the Claimant in connection with the above-entitled matter.

2. Prior to the May 30, 2006 deadline set for the exchange of documents in this matter, I received no request from the Respondent for additional time to provide its documents. Furthermore, the Tribe did not contact me to let me know that the document production would be late or that it had encountered any difficulties in connection with the same.

3. I was in trial the week of June 5, 2006.

4. The Tribe's legal counsel did not contact me prior to noticing my client's deposition to attempt to schedule a date that would work for me and my client.

5. Shortly after instituting this arbitration proceeding, I spoke with the Tribe's counsel stating that I would be willing to make Mr. Warren Barse available for deposition at the Tribe's convenience and that the Tribe just needed to let me know when it wanted to depose my client.

6. After the April 11, 2006 telephonic preliminary hearing in this matter, I once again offered for the Tribe to depose Mr. Barse.

7. Attached hereto as Exhibit 1 is a true and correct copy of correspondence dated April 20, 2006 from me to Tribal Counsel Peter Capossela.

8. Attached hereto as Exhibit 2 is a true and correct copy of correspondence dated April 24, 2006 from me to Tribal Counsel Peter Capossela.

9. Attached hereto as Exhibit 3 is a true and correct copy of correspondence dated May 17, 2006 from me to Tribal Counsel Peter Capossela.

10. Attached hereto as Exhibit 4 is a true and correct copy of correspondence dated June 1, 2006 from me to Tribal Counsel Peter Capossela.

11. Attached hereto as Exhibit 5 is a true and correct copy of the Oglala Sioux Tribe's Response to Request for Production.

12. Attached hereto as Exhibit 6 is a true and correct copy of correspondence from Shannon Falon, an associate in my office, to Tribal Counsel Peter Capossela.

13. Attached hereto as Exhibit 7 is a true and correct copy of email correspondence dated June 8, 2006 from Tribal Counsel Peter Capossela to Shannon Falon, an associate in my office.

14. Attached hereto as Exhibit 8 are true and correct copies of email correspondence between Tribal Counsel Peter Capossela and me dated June 8, 2006.

15. Attached hereto as Exhibit 9 is a true and correct copy of email correspondence dated June 12, 2006 from me to Tribal Counsel Peter Capossela.

16. Attached hereto as Exhibit 10 is a true and correct copy of email correspondence from Tribal Counsel Peter Capossela to me dated June 19, 2006.

17.     Attached hereto as Exhibit 11 is a true and correct copy of email correspondence from me to Tribal Counsel Peter Capossela dated June 21, 2006.

18.     Attached hereto as Exhibit 12 are true and correct copies of email correspondence between Tribal Counsel Peter Capossela and me dated June 21 & 22, 2006.

19.     Further your affiant sayeth not.


Dated this 10th day of July, 2006.

_____
A. Russell Janklow

Subscribed and sworn by me this 10th day of July, 2006.

_____
Notary Public - State of South Dakota

My Commission expires: 1 20 2006

(SEAL)
PATRICIA L. LARSEN
NOTARY PUBLIC
SOUTH DAKOTA
SEAL

3

## CERTIFICATE OF SERVICE

The undersigned hereby certifies that a true and correct copy of **Affidavit of Counsel** was served via email and first class mail, postage prepaid, upon the following:

Peter Capossela
P.O. Box 204
Walterville, Oregon 97489

*Attorney for the Oglala Sioux Tribe*

on this _10th_ day of July, 2005.

A. Russell Janklow

**Sioux Falls Office**
Steven M. Johnson
Scott N. Heidepriem*
A. Russell Janklow
Scott A. Abdallah*
Ronald A. Parsons, Jr.
Matthew T. Tobin
Tamara A. Wilka
Shannon Falon
Kimberly J. Lanham
Brendan V. Johnson

# Johnson, Heidepriem, Miner, Marlow & Janklow, L.L.P.

431 North Phillips Avenue, Suite 400
Sioux Falls, South Dakota 57104-5933

**Mailing Address:**
P.O. Box 1107
Sioux Falls, South Dakota 57101-1107

Telephone (605)338-4304 • FAX (605)338-4162

**Reply To: Sioux Falls**

April 20, 2006

**Yankton Office**
Steven M. Johnson
Michael F. Marlow
Sheila S. Woodward**†
Steven K. Huff**

Celia Miner
Gerald L. Reade
*of counsel*

P.O. Box 667
200 West Third Street
Yankton, SD 57078-0667
Telephone (605)665-5009
FAX (605)665-4788

**\*\*Also Admitted in Iowa
†Also Admitted in Nebraska**

*Also Admitted in Minnesota

Mr. Peter Capossela
P.O. Box 204
Walterville, OR 97489

     Re:    C&W Enterprises vs. Oglala Sioux Tribe

Dear Peter:

     Enclosed please find documents relevant to my client's claims against the Oglala Sioux Tribe and the Tribe's counterclaim against my client. The majority of these documents relate to the Base and Blotter contract, and I believe that you may already have the majority of them from your own client. In addition to these documents, my client intends to rely upon documents previously disclosed to you in connection with the Route 2 & 41 project, Wounded Knee to Manderson project, and Multi-Gravel project. In our earlier attempts to negotiate this dispute prior to arbitration, my client produced a binder to you and your client that contains several documents pertaining to these three contracts. I assume that you are still in possession of that binder. If you are not, please let me know, and I will get you another set of those documents.

     In addition to the documents that we are providing to you today and the documents you have previously received, my client may rely upon the audio tape of the preconstruction meeting for the Base and Blotter project. If you don't have a copy of this tape, let me know and I will provide one to you.

     My client would request that you timely produce all documents that you intend to rely upon either in support of your client's counterclaim or in defense of my client's claim. I would also specifically request all documents between your client and Dakota Engineering that relate to any of the four contracts and all documents between your client and the BIA that relate to any of the four contracts.

     Please don't hesitate to contact me if there are particular documents that you desire that we have failed to disclose. Since we are not proceeding by way of formal discovery requests, we are attempting to provide everything that we think is relevant, but if you feel something is missing, please let us know.

EXHIBIT 1

In accordance with Mr. Overcash's suggestion, we would be open to discussing these issues in advance of our May 4, 2006 meeting to see if we can reach agreements on any of the issues and thus limit the scope of the arbitration. If this interests you, please contact my office so we can discuss this further.

Best regards,

A. RUSSELL JANLKOW
For the firm

ARJ: sf
enclosures
cc:     Warren Barse

**Sioux Falls Office**
Steven M. Johnson
Scott N. Heidepriem*
A. Russell Janklow
Scott A. Abdallah*
Ronald A. Parsons, Jr.
Matthew T. Tobin
Tamara A. Wilka
Shannon Falon
Kimberly J. Lanham
Brendan V. Johnson

# Johnson, Heidepriem, Miner, Marlow & Janklow, L.L.P.

431 North Phillips Avenue, Suite 400
Sioux Falls, South Dakota 57104-5933

**Mailing Address:**
P.O. Box 1107
Sioux Falls, South Dakota 57101-1107

Telephone (605)338-4304 • FAX (605)338-4162

**Reply To: Sioux Falls**

April 24, 2006

**Yankton Office**
Steven M. Johnson
Michael F. Marlow
Sheila S. Woodward**†
Steven K. Huff**

Celia Miner
Gerald L. Reade
*of counsel*

P.O. Box 667
200 West Third Street
Yankton, SD 57078-0667
Telephone (605)665-5009
FAX (605)665-4788

*Also Admitted in Minnesota

**Also Admitted in Iowa
†Also Admitted in Nebraska

Mr. Peter Capossela
P.O. Box 204
Walterville, OR 97489

      Re:    C&W Enterprises vs. Oglala Sioux Tribe

Dear Peter:

    I trust that you received the documents that I sent to you on April 20, 2006. In my previous correspondence, I requested that you provide me certain documents as soon as possible. I am writing today to slightly expand that request to include a couple more categories of documents.

    I had previously requested all documents that you intend to rely upon either in support of your client's counterclaim or in defense of my client's claim, all documents between your client and Dakota Engineering that relate to any of the four contracts, and all documents between your client and the BIA that relate to any of the four contracts. In addition, I would like to request all documents between your client and Richard Tasker of Sage Associates and all documents between your client and North American Specialty Insurance Company. I would also request all documents between Dakota Engineering and Mr. Tasker and Dakota Engineering and North American Specialty Insurance Company. I thank you in advance for your cooperation and prompt attention to these requests.

    As I expressed in my last correspondence, we would be open to discussing issues in advance of our May 4, 2006 meeting to see if we can reach agreements on any of the issues and thus limit the scope of the arbitration. If this interests you, please contact my office so we can discuss this further.

Best regards,

A. RUSSELL JANLKOW
For the firm

ARJ: sf
cc:    Warren Barse

**EXHIBIT**

**Sioux Falls Office**
Steven M. Johnson
Scott N. Heidepriem*
A. Russell Janklow
Scott A. Abdallah*
Ronald A. Parsons, Jr.
Matthew T. Tobin
Tamara A. Wilka
Shannon Falon
Kimberly J. Lanham
Brendan V. Johnson

# Johnson, Heidepriem, Miner, Marlow & Janklow, L.L.P.
431 North Phillips Avenue, Suite 400
Sioux Falls, South Dakota 57104-5933

**Mailing Address:**
P.O. Box 1107
Sioux Falls, South Dakota 57101-1107

Telephone (605)338-4304 • FAX (605)338-4162

**Reply To: Sioux Falls**

May 17, 2006

**Yankton Office**
Steven M. Johnson
Celia Miner **
Michael F. Marlow
Sheila S. Woodward**†
Steven K. Huff**

Gerald L. Reade
*of counsel*

P.O. Box 667
200 West Third Street
Yankton, SD 57078-0667
Telephone (605)665-5009
FAX (605)665-4788

**Also Admitted in Iowa
†Also Admitted in Nebraska

*Also Admitted in Minnesota

Mr. Peter Capossela
P.O. Box 204
Walterville, OR 97489

Re:     C&W Enterprises vs. Oglala Sioux Tribe

Dear Peter:

I understand that you are working to compile the documents that we have requested in connection with the arbitration and that you will be contacting me so that we can arrange a time for my office to view the documents. I wanted to add a few more categories of documents to the request. I would like to inspect all documents from any tribal body, including, but not limited to, the Oglala Sioux Tribal Council and the Oglala Sioux Tribal Executive Committee, that relate to any of the four contracts involved in the arbitration. This would include any resolutions or other formal action taken regarding those contracts as well as meeting minutes. I would also like to view all tribal documents relative to the relationships between the various tribal organizations and how authority is delegated between them. It is my understanding from our previous meeting with Mr. Overcash that you intend to offer much of this evidence to establish your case. Thus, I anticipate that have already compiled much of this information. Thank you for your attention to this request. I look forward to hearing from you regarding the arrangement of a mutually convenient time for my office to view the documents.

Best regards,

A. RUSSELL JANLKOW
For the firm

ARJ: sf
cc:     Warren Barse

EXHIBIT
3

# Johnson, Heidepriem, Miner, Marlow & Janklow, L.L.P.

**Sioux Falls Office**
Steven M. Johnson
Scott N. Heidepriem*
A. Russell Janklow
Scott A. Abdallah*
Ronald A. Parsons, Jr.
Matthew T. Tobin
Tamara A. Wilka
Shannon Falon
Kimberly J. Lanham
Brendan V. Johnson

431 North Phillips Avenue, Suite 400
Sioux Falls, South Dakota 57104-5933

**Mailing Address:**
P.O. Box 1107
Sioux Falls, South Dakota 57101-1107

Telephone (605)338-4304 • FAX (605)338-4162

**Reply To: Sioux Falls**

**Yankton Office**
Steven M. Johnson
Michael F. Marlow
Sheila S. Woodward**†
Steven K. Huff*»

Celia Miner
Gerald L. Reade
*of counsel*

P.O. Box 667
200 West Third Street
Yankton, SD 57078-0667
Telephone (605)665-5009
FAX (605)665-4788

**Also Admitted in Iowa
†Also Admitted in Nebraska

*Also Admitted in Minnesota

June 1, 2006

Mr. Peter Capossela
P.O. Box 204
Walterville, OR  97489

   Re:  C&W Enterprises vs. Oglala Sioux Tribe

Dear Peter:

   I have received your notice to take Warren Barse's deposition at Pine Ridge on June 16, 2006. I will certainly agree to make Warren available for deposition, but I do not think he should have to travel to Pine Ridge for that purpose. The arbitration hearing will be held in Sioux Falls, and Warren resides in Sioux Falls. Thus, I believe Sioux Falls to be the logical place for his deposition. However, in the interest of cooperation, I am willing to meet you half way and agree to allow you to take Warren's deposition in Chamberlain, South Dakota. I believe this to be a reasonable compromise.

   I would also like to address document production. As you know, I have previously requested documents from you relative to this case, and you have agreed to produce the same for my inspection at a mutually convenient time. In his May 8, 2006 Preliminary Hearing and Scheduling Order, Mr. Overcash set May 30, 2006 as the deadline for parties to complete the exchange of all relevant documents. That day has passed, and I have not heard from you regarding document production. As you know, we are to agree by June 7, 2006 whether additional discovery will be needed, and we have a telephonic hearing scheduled with Mr. Overcash on June 8, 2006 to discuss the same. Thus, it is imperative that I receive your client's documents as soon as possible. Given the short time frame, I believe it would be easiest for you to arrange to have all of the documents copied by a third party such as Kinkos and sent to my office. My client will pay the expense involved with the copying. Please contact me as soon as possible so that we may discuss this issue. I look forward to hearing from you.

         Best regards,

         A. RUSSELL JANKLOW
         For the firm

ARJ:sf
cc:  Warren Barse

**EXHIBIT**
4

| | | |
|---|---|---|
| In the Matter of the Arbitration between | ) | |
| | ) | |
| | ) | 65 110 Y 00019 06 |
| C & W Enterprises, Inc. | ) | |
| | ) | |
| and | ) | OGLALA SIOUX TRIBE |
| | ) | RESPONSE TO REQUEST |
| | ) | FOR PRODUCTION |
| Oglala Sioux Tribe | ) | |

To Russell Janklow and Shannon Falon, Attorneys for C & W Enterprises:

The Oglala Sioux Tribe responds to your request for documents in the above-caption action and makes the following documents available at The Little Print Shop, 401 Main Street Rapid City, South Dakota 57701, Attention: Avis Tellinghuisen (605) 342-2679, from 9:00 a.m. on June 6, 2006 through to 4:30 p.m. on June 9, 2006:

1. Documents of the Oglala Sioux Tribe relating to the contracts with C & W Enterprises;

2. Documents relating to communications between the Oglala Sioux Tribe and NAS Surety;

3. Documents relating to the construction inspections of Dakota Engineering for the Oglala Sioux Tribe;

4. Ordinances and documents relating to operation of the Oglala Sioux Tribal government.

EXHIBIT

5

bobbes'

Alternative arrangements for the inspection and copying of the documents may be made with the undersigned, if necessary.

DATED this __2nd__ day of June, 2006

By: ____/s/_____

Peter Capossela
Attorney at Law
Post Office Box 204
Walterville, Oregon 97489
(541) 896-3472


Attorney for Oglala Sioux Tribe

Certificate of Service

I hereby state that on this date I transmitted via electronic mail the afore with -

A. Russell Janklow
Shannon Falon
Johnson, Heidepriem, Miner, Marlow & Janklow
431 N. Phillips Avenue  Suite 400
Sioux Falls, South Dakota 57101


Dated this __2nd__ day of June, 2006


_____/s/_____

ATTORNEYS AT LAW

**Sioux Falls Office**
Steven M Johnson
Scott N Heidepriem*
A Russell Janklow
Scott A Abdallah*
Ronald A Parsons, Jr.
Tamara A Wilka
Shannon Falon
Kimberly J Lanham
Brendan V. Johnson

*Also Admitted in Minnesota

# Johnson, Heidepriem, Miner, Marlow & Janklow, L.L.P.

431 North Phillips Avenue, Suite 400
Sioux Falls, South Dakota 57104-5933

Mailing Address:
P.O. Box 1107
Sioux Falls, South Dakota 57101-1107

Telephone (605)338-4304 • FAX (605)338-4162

Reply To: Sioux Falls

**Yankton Office**
Steven M. Johnson
Michael F. Marlow
Sheila S. Woodward**/***
Steven K. Huff**

Of Counsel:
Celia Miner
Gerald L. Reade

P.O. Box 667
200 West Third Street
Yankton, SD 57078-0667
Telephone (605)665-5009
FAX (605)665-4788

**Also Admitted in Iowa
***Also Admitted in Nebraska

**VIA Email and First Class Mail**
Mr. Peter Capossela
P.O. Box 204
Walterville, OR 97489

Re:   C&W Enterprises vs. Oglala Sioux Tribe

Dear Peter:

We have received the Oglala Sioux Tribe's Response to Request for Production. It is my understanding from that response that the documents will be available at the Little Print Shop in Rapid City from June 6, 2006 through June 9, 2006. Unfortunately, neither Russ nor I are available to travel to Rapid City this week to review the documents. Russ is in trial all week, and I have obligations with my ill daughter that do not permit me to travel at this time. As Russ expressed to you in his earlier letter, we would like to arrange to have the documents copied and delivered to our offices as soon as possible. We would, of course, pay for the costs incurred in so doing. Would you be willing to arrange this with the Print Shop?

Secondly, as you know, we have a conference call scheduled this week with Mr. Overcash to discuss discovery and other issues. Since Russ is in trial this week, I will be handling that call. If at all possible, I would like to receive the documents in advance of that conference call so that I can review them prior to the call. Please let me know if this will be possible. Also, please let me know if you anticipate taking additional discovery in this case so that we can discuss that in advance of our call with the arbitrator.

Finally, I believe that we are to notify the American Arbitration Association by June 15, 2006 regarding a location for the arbitration. I understand your desire not to have the arbitration take place in our offices but to instead pick an alternative location. Have you given any thought to places you might like to use? I could have my legal assistant check with hotels for conference room availability and pricing unless you have other plans. Please let me know your thoughts on this. I look forward to hearing from you.

EXHIBIT
6

Best regards,

SHANNON FALON
For the firm

cc:     Warren Barse

## Shannon Falon

**From:** Peter [pcapossela@nu-world.com]

**Sent:** Thursday, June 08, 2006 12:13 PM

**To:** Shannon Falon

Ms. Falon:

My schedule does not enable me to get to eastern S.D. on June 16. I would find a suitable site in Rapid City on that day.

If C & W Enterprises will not produce Warren Barse in Rapid City on June 16, please advise. As I stated this morning, my schedule is such that after June 16, I am unable to be in the region until mid-July. Accordingly, if June 16 in Rapid City is unacceptable, I will seek relief from the existing scheduling order and we can do it in mid or late July in Lincoln.

I was a little bit taken aback by the statement that Mr. Barse is afraid to appear in Pine Ridge. Notwithstanding the legal dispute, to my knowledge the Tribe and Tribal officials have been professional and courteous to him, repeatedly scheduling meetings at his request, and on short notice. A member of his firm (I believe she is his daughter) actually drove to the Tribal radio station in Porcupine, S.D., and asked to be a guest on the radio program. I am told that she went on the airwaves, and criticized Tribal officials involved in the legal dispute. Clearly, these folks are not that uncomfortable going to the Reservation.

Nevertheless, per the arbitrator's instructions I do want to work it out. Unfortunately, the options are limited when looking at my schedule and the scheduling order. Chamberlain or Pierre do not work for me in any event, because they are more difficult for me to get to. If Rapid City does not work, Lincoln is more convenient than any of the alternatives that have been proposed.

Thank you for your attention to this. I appreciate a timely response, so I can make arrangements accordingly.

Peter Capossela



## Shannon Falon

| | |
|---|---|
| **From:** | Russ Janklow |
| **Sent:** | Thursday, June 08, 2006 2:15 PM |
| **To:** | 'Peter' |
| **Subject:** | RE: |

So be it, I told you of my conflicts, I am in depos here on the 14th and 15th, so I will NOT be in Pine Ridge or Rapid City on the 16th, I could get up early in the morning and drive to Chamberlain. I am not counting beans or anything else, if Chamberlain does not work, then file whatever you need to file

*A. Russell Janklow*
Johnson, Heidepriem, Miner, Marlow & Janklow, LLP
P.O. Box 1107, Sioux Falls, SD  57101-1107
Telephone:  (605) 338-4304; Fax:  (605) 338-4162
E-Mail:  russ@jhmmj.com

---

**From:** Peter [mailto:pcapossela@nu-world.com]
**Sent:** Thursday, June 08, 2006 2:01 PM
**To:** Russ Janklow
**Subject:** Re:

Mr. Janklow:

Thank you for your message.  The problem is what you propose as the middle, is not the middle for everyone involved.  In addition, I cannot be in Chamberlain on June 16, because of where I need to be later that day.  I am just trying to get it scheduled and completed, I am not counting beans on mileage or convenience.

A reasonable request should be complied with.  We provided as much advance notice as possible.  The Tribe was cooperative on short notice for the scheduling of the preliminary hearing, and with the development of the scheduling order.  I traveled to Sioux Falls on short notice for the preliminary hearing.  The Tribe cooperated with the document request, which involved alot of work.

It is not unduly burdensome for the contractor to go to Rapid City, if Pine Ridge is objected to.  The best thing for everyone would be to appear, and get it over with.

If Pine Ridge or Rapid City for June 16 remains objectionable, I appreciate your confirming this.  Moving the location takes the date off the table for me, and jeopardizes the abbreviated schedule in the case.

Peter Capossela

----- Original Message -----
**From:** Russ Janklow
**To:** Peter Capossela (E-mail)
**Cc:** Shannon Falon
**Sent:** Thursday, June 08, 2006 11:30 AM

I am not going to Rapid City on the 16th, I could make chamberlain. I am in depos on the 14th and 15th here in Sioux falls. You want pine ridge, we want Sioux falls, I would meet you in the middle and do Chamberlain. Let me know if that works, if not, file whatever you think you need to file

A. Russell Janklow
Johnson, Heidepriem, Miner, Marlow & Janklow, LLP
431 N. Phillips Avenue, Suite 400



**EXHIBIT**
8

7/3/2006

P.O. Box 1107
Sioux Falls, SD 57101-1107
Telephone: (605) 338-4304
Fax: (605) 338-4162
E-Mail: russ@jhmmj.com

CONFIDENTIALTY NOTICE:  This E-mail (including attachments) is covered by the Electronic Communications Act, 18 U.S.C. 2210-2521, is confidential and may be legally privileged.  This E-mail contains information that is private, confidential, or is protected by the attorney-client work product doctrines, and is intended only for the use of the individual (s) named herein.  If you are not the intended recipient, be advised that unauthorized use, disclosure, copying, distribution, or the taking of any action in reliance on this information is strictly prohibited.  If you have received this E-mail in error, please immediately notify the sender by replying to this E-mail, and delete the original message and any attachments. Thank you.

**Shannon Falon**

---

**From:** Russ Janklow

**Sent:** Monday, June 12, 2006 5:07 PM

**To:** 'Peter'

**Cc:** Shannon Falon; Patty Larsen

Please let me know of some other dates that you may be in the middle or eastern South Dakota to get Mr. Barse deposition scheduled. I will be out of town the first week in July, but have time from the 10th to the 21st that I can get something scheduled

A. Russell Janklow
Johnson, Heidepriem, Miner, Marlow & Janklow, LLP
431 N. Phillips Avenue, Suite 400
P.O. Box 1107
Sioux Falls, SD 57101-1107
Telephone: (605) 338-4304
Fax: (605) 338-4162
E-Mail: russ@jhmmj.com

CONFIDENTIALTY NOTICE: This E-mail (including attachments) is covered by the Electronic Communications Act, 18 U.S.C. 2210-2521, is confidential and may be legally privileged. This E-mail contains information that is private, confidential, or is protected by the attorney-client work product doctrines, and is intended only for the use of the individual(s) named herein. If you are not the intended recipient, be advised that unauthorized use, disclosure, copying, distribution, or the taking of any action in reliance on this information is strictly prohibited. If you have received this E-mail in error, please immediately notify the sender by replying to this E-mail, and delete the original message and any attachments. Thank you.

EXHIBIT

_9_

## Shannon Falon

**From:** Russ Janklow
**Sent:** Monday, June 19, 2006 3:16 PM
**To:** Shannon Falon
**Subject:** FW:

Call me on this, thanks

*A. Russell Janklow*
Johnson, Heidepriem, Miner, Marlow & Janklow, LLP
P.O. Box 1107, Sioux Falls, SD 57101-1107
Telephone: (605) 338-4304; Fax: (605) 338-4162
E-Mail: russ@jhmmj.com

---

**From:** Peter [mailto:pcapossela@nu-world.com]
**Sent:** Monday, June 19, 2006 1:35 PM
**To:** Russ Janklow
**Cc:** Jeffrey L. Whalen Director
**Subject:**

Mr. Janklow:

The May 25th deposition notice was a good faith effort to keep the arbitration process moving. My schedule does not permit me to travel to Pierre or Chamberlain, under the time constraints in this arbitration. C & W Enterprises' refusal to honor the deposition notice forces the scheduling order to be modified in any event. The entire proceeding is jeopardized, and I stated as much previously.

The Base and Blotter contract contains no waiver of sovereign immunity for arbitration. Accordingly, the Tribe has authorized that I file a motion to dismiss the Base and Blotter claim from arbitration on sovereign immunity grounds, and that it be adjudicated in Tribal Court as provided in the contract. The Tribe had hoped to address Base and Blotter on the merits in arbitration, for the sake of dealing with all of the issues together in an orderly manner. C & W Enterprises' refusal to cooperate in discovery has shot that notion down.

The Tribe would forego filing the motion if -

1. Barse appears for a deposition in Pine Ridge on July 14 (I would have to confirm ct. reporter and offc. space for that date), and C & W produces the documents requested.

2. All other discovery is complied with.

Thank you for your attention to the above.

Peter Capossela



EXHIBIT
_10_

7/3/2006

## Shannon Falon

**From:** Russ Janklow

**Sent:** Wednesday, June 21, 2006 12:14 PM

**To:** 'Peter'

Please call me at your convenience Peter. I have talked to my client. We can do the depo in either Pierre or Chamberlain on the 14th of July. The bigger concern we have at this stage of the proceedings is your client's threat to file the motion to dismiss for sovereign immunity. The threat calls into question the entire proceeding to date and is of grave concern in light of the time and expense that all parties have spent and incurred to date. In light of the threat, my client needs to have some written assurance that the tribe has or is waiving immunity or you should go forward and file your motion to dismiss as we have no interest in arbitrating the base and blotter contract only to wake up after the proceeding and have the tribe assert immunity at that time. I think I made my concerns clear to you in our last phone conversation. Call me when you have a minute to talk, thank you

A. Russell Janklow
Johnson, Heidepriem, Miner, Marlow & Janklow, LLP
431 N. Phillips Avenue, Suite 400
P.O. Box 1107
Sioux Falls, SD 57101-1107
Telephone: (605) 338-4304
Fax: (605) 338-4162
E-Mail: russ@jhmmj.com

CONFIDENTIALTY NOTICE: This E-mail (including attachments) is covered by the Electronic Communications Act, 18 U.S.C. 2210-2521, is confidential and may be legally privileged. This E-mail contains information that is private, confidential, or is protected by the attorney-client work product doctrines, and is intended only for the use of the individual(s) named herein. If you are not the intended recipient, be advised that unauthorized use, disclosure, copying, distribution, or the taking of any action in reliance on this information is strictly prohibited. If you have received this E-mail in error, please immediately notify the sender by replying to this E-mail, and delete the original message and any attachments. Thank you.


EXHIBIT

11

## Shannon Falon

| | |
|---|---|
| **From:** | Russ Janklow |
| **Sent:** | Thursday, June 22, 2006 9:47 PM |
| **To:** | Peter |
| **Cc:** | Shannon Falon |
| **Subject:** | RE: |

Your client's threat at this stage of the proceedings is very troubling. O have offered my client for a deposition for at least a couple of months. You arvitrarily set a date with no regard for my calendar. I offered a comprimise to .eet in chamberlain. My client is still available for a deposition in chamberlain on the 14th. I understand that you will be filing a motion to dismiss. That is unfortunate. Let me know.

-----Original Message-----
From: "Peter" <pcapossela@nu-world.com>
To: "Russ Janklow" <russ@jhmmj.com>
Sent: 6/21/06 4:05 PM
Subject: Re:

Mr. Janklow:

    I have consulted w/ senior Tribal officials regarding our discussion this morning. I am authorized to reject the request for a written statement including any additional waiver of immunity. I am also authorized to reiterate that the motion to dismiss Base and Blotter shall be filed unless C & W Enterprises agrees to appear for a deposition in Pine Ridge on July 14, and to otherwise cooperate w/ discovery. If C & W does so, the Tribe stands prepared to continue to litigate Base and Blotter on the merits before AAA.

    I shall telephone you to discuss this, per our discussion this morning. Thank you for our attention to this.

    Peter Capossela


    ----- Original Message -----
From: Russ Janklow
To: Peter
Sent: Wednesday, June 21, 2006 10:13 AM


Please call me at your convenience Peter. I have talked to my client. We can do the depo in either Pierre or Chamberlain on the 14th of July. The bigger concern we have at this stage of the proceedings is your client's threat to file the motion to dismiss for sovereign immunity. The threat calls into question the entire proceeding to date and is of grave concern in light of the time and expense that all parties have spent and incurred to date. In light of the threat, my client needs to have some written assurance that the tribe has or is waiving immunity or you should go forward and file your motion to dismiss as we have no interest in arbitrating the base and blotter contract only to wake up after the proceeding and have the tribe assert immunity at that time. I think I made my concerns clear to you in our last phone conversation. Call me when you have a minute to talk, thank you


A. Russell Janklow

Johnson, Heidepriem, Miner, Marlow & Janklow, LLP

431 N. Phillips Avenue, Suite 400

P.O. Box 1107

1


EXHIBIT
12

Sioux Falls, SD 57101-1107

Telephone: (605) 338-4304

Fax: (605) 338-4162

E-Mail: russ@jhmmj.com

CONFIDENTIALTY NOTICE: This E-mail (including attachments) is covered by the Electronic Communications Act, 18 U.S.C. 2210-2521, is confidential and may be legally privileged. This E-mail contains information that is private, confidential, or is protected by the attorney-client work product doctrines, and is intended only for the use of the individual(s) named herein. If you are not the intended recipient, be advised that unauthorized use, disclosure, copying, distribution, or the taking of any action in reliance on this information is strictly prohibited. If you have received this E-mail in error, please immediately notify the sender by replying to this E-mail, and delete the original message and any attachments. Thank you.

| | |
|---|---|
| In the Matter of the Arbitration between ) | |
| ) | |
| ) | 65 110 Y 00019 06 |
| C & W Enterprises, Inc. ) | |
| ) | |
| and ) | OGLALA SIOUX TRIBE |
| ) | REPLY BRIEF IN SUPPORT |
| ) | OF MOTION TO DISMISS |
| Oglala Sioux Tribe. ) | BASE AND BLOTTER CLAIM |

## I.   Issue

The issue arising from the C & W Enterprises' opposition brief to the Tribe's

Motion to Dismiss Base and Blotter claim may be stated as follows:

Does the filing of a counterclaim by a Tribal defendant act as a waiver of the

Tribe's sovereign immunity?

## II.   A Claim by an Indian Tribe is Not a Waiver of Sovereign Immunity

It is established law that the mere advancement of a legal claim by an Indian

Tribe is not a waiver of the Tribe's sovereign immunity.   "A tribe does not waive its

immunity from actions that could not otherwise be brought before it merely because

those actions were pleaded in a counterclaim to an action filed by the tribe." *Oklahoma*

*Tax Commission v. Citizen Band of Potawatomi Indian Tribe of Oklahoma*, 498 U.S. 505,

509 (1991), *citing United States v. United States Fidelity & Guaranty Co.*, 309 U.S. 506,

513 (1940).   "When a Tribe brings a lawsuit, it does not waive immunity for

1