**FILED**

SEP 1 0 2007

CLERK

UNITED STATES DISTRICT COURT

DISTRICT OF SOUTH DAKOTA

WESTERN DIVISION

| | | |
|---|---|---|
| OGLALA SIOUX TRIBE, | ) | CIV. 07-5024-KES |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| vs. | ) | ORDER GRANTING |
| | ) | INJUNCTION |
| C & W ENTERPRISES, INC., | ) | |
| | ) | |
| Defendant. | ) | |

Plaintiff, Oglala Sioux Tribe (OST), moves this court to vacate the orders of execution entered against it on behalf of C & W Enterprises, Inc. (© & W) by the Second Judicial Circuit in South Dakota (state court). OST also moves the court to enjoin the state court from proceeding on the underlying litigation based upon a lack of subject matter jurisdiction. C & W opposes the motion.

## BACKGROUND

OST, an Indian tribe recognized by the United States government, contracted with C & W, a South Dakota corporation that is Indian owned and qualifies for an Indian preference, to perform four road construction projects: Multi-Project Gravel; Manderson to Wounded Knee Project; Cuny Table Project; and Base and Blotter Project, all of which were on tribal land. All of the contracts were entered into on the Pine Ridge Indian Reservation. The contracts for the Multi-Project Gravel, the Manderson to Wounded Knee

Project, and the Cuny Table Project contain the following dispute resolution

clauses:

> **Limited Waiver of Sovereign Immunity.**  As a condition precedent to the parties being bound by the terms and conditions of this Contract, the Oglala Sioux Tribe of the Pine Ridge reservation shall pass a resolution stating in material respects the following; (1) for the purpose of insuring the successful completion of the work and related matter, in order to provide the greatest social and economic benefits for the Oglala Sioux Tribe, the Oglala Sioux Tribe grants a limited waiver of its immunity for any and all disputes arising from this Contract, including the interpretation of the agreement and work completed or to be completed under the Contract; provided, however, that such waiver extends only to the Oglala Sioux Tribe and Transportation's specific obligations under the Contract; and further provided that such waiver shall be only to the extent necessary to permit enforcement by the Subcontractor.  Nothing in the resolution is intended to waive nor shall it be construed to waive the sovereign immunity of the Oglala Sioux Tribe with respect to any disputes or matters outside the terms of this Contract, nor as to any claims or demands by any person or entity not a signatory to the Contract;

> . . .

> **Claim Resolution.**  The parties agree to bring any and all claims in the first instance to the Oglala Sioux Tribe Executive Committee for non-binding mediation, and thereafter to the South Dakota Federal District Court, and in the absence of Federal Court jurisdiction, the parties agree to arbitration in accordance with the Construction Industry Arbitration Rules of the American Arbitration Association in effect at the time of this Contract.  In the event there exists no Federal Court jurisdiction and the parties proceed to arbitration, the award rendered by the arbitrator shall be final, and judgment may be entered upon it in accordance with the applicable law in any court having jurisdiction thereof.  In the event either party does not timely comply in accordance with the Construction Industry Arbitration Rules of the American Arbitration Association, said

2

> party waives its right to arbitration and judgment may be
> entered in the amount in dispute in accordance with applicable
> law in any court having jurisdiction thereof.

Docket 48, Ex. F, G, H.  The Base and Blotter Project contract does not

contain a limited waiver of sovereign immunity provision and provides for

dispute resolution before the Oglala Sioux Tribal Court.  Docket 48, Ex. I.

The parties dispute whether OST subsequently waived its sovereign

immunity regarding the Base and Blotter Project contract.

After experiencing problems with timely payment under the contracts,

C & W demanded arbitration of four causes of action: (1) breach of the

Multi-Project Gravel contract; (2) breach of the Manderson to Wounded Knee

Project contract; (3) breach of the Cuny Table Project contract; and

(4) breach of the Base and Blotter Project contract.

OST moved in the arbitration proceedings to dismiss the action for

breach of the Base and Blotter Project contract, arguing that the claim was

barred by sovereign immunity.  The arbitrator denied the motion to dismiss

the action for breach of the Base and Blotter Project contract after finding

that OST waived its sovereign immunity.  OST subsequently moved this

court for a temporary restraining order, prohibiting arbitration of the action

for breach of the Base and Blotter Project contract.  This court dismissed

OST's motion for a temporary restraining order, finding that the court

3

lacked subject matter jurisdiction.  Oglala Sioux Tribe v. C & W Enters., Inc., Civ. 06-5063 (Docket 19), aff'd, 487 F.3d 1129 (8th Cir. 2007).

The arbitration commenced on August 30, 2006, in Sioux Falls, South Dakota.  The arbitrator found in favor of C & W on the four construction contracts.  Docket 48, Ex. B.  On January 29, 2007, C & W filed a petition to confirm the arbitration award and obtain an entry of judgment in state court.  Docket 48, Ex. C.  On March 16, 2007, OST filed an action in this court seeking a declaratory judgment that the state court lacked jurisdiction, and in the alternative seeking a permanent injunction prohibiting C & W from pursuing the claim in state court.  Docket 1.  C & W moved to dismiss the action, arguing that this court lacked jurisdiction.  Docket 10.  The court denied the motion to dismiss, finding that it had federal question jurisdiction and that the court had the power to determine whether the state court had jurisdiction to enter judgment on the arbitration award.  Docket 43.

On May 29, 2007, while the motion to dismiss was pending, a hearing was held in state court on C & W's motion to confirm the arbitration award.  Docket 41, Ex. B.  OST did not participate in the state court hearing and did not appear specially to contest jurisdiction.  A default judgment was entered in favor of C & W in the amount of the arbitration award.  On June 29, 2007, C & W petitioned for and obtained two executions of the judgment.

4

Docket 41, Ex. D.  One execution was against funds that the South Dakota Department of Revenue is holding for OST.  The second execution was for funds in a back account.  Both executions were returned unsatisfied, but the parties have represented to the court that the South Dakota Department of Revenue is holding the funds pending the resolution of this case.  OST amended its complaint on August 18, 2007, to include allegations regarding the orders of execution issued by the state court.  Docket 48.

In addition to litigation both in this court and in state court, OST also filed a motion to vacate the arbitration award in the Oglala Sioux Tribal Court on April 30, 2007.  The Tribal Court vacated the arbitration award and C & W has represented to the court that it will appeal the Tribal Court decision to the Supreme Court of the Oglala Sioux Nation.

Subsequent to the issuance of the orders of execution by the state court, OST filed a motion in this court to vacate the executions and enjoin the state court from conducting further proceedings.  Docket 45.  OST argues that the state court lacks subject matter jurisdiction to adjudicate the case.  A hearing was held on the motion before this court on September 7, 2007.

## DISCUSSION

### I.    Power of the Court

"[F]ederal courts have a strict duty to exercise the jurisdiction that is conferred upon them by Congress." Quackenbush v. Allstate Ins. Co., 517 U.S. 706, 716, 116 S. Ct. 1712, 135 L. Ed. 2d 1 (1996).  This court has found that it has jurisdiction under 28 U.S.C. § 1331 to determine whether the state court is vested with the power to adjudicate the contractual disputes at issue in this case.  Docket 43.

OST moves this court to enjoin the proceedings of a state court.  The court notes that the Anti-Injunction Act, 28 U.S.C. § 2283, does not prevent the court from acting in this instance.  The Anti-Injunction Act provides:

> A court of the United States may not grant an injunction to stay proceedings in a State court except as expressly authorized by Act of Congress, or where necessary in aid of its jurisdiction, or to protect or effectuate its judgments.

28 U.S.C. § 2283.

The second clause of the Act, allowing a court of the United States to stay proceedings "where necessary in aid of its jurisdiction" is applicable in this case.  "This exception has been expressly held to permit Indian tribes to bring federal court suits to enjoin state court proceedings where the threshold issue is whether the state court has jurisdiction over the subject matter of the dispute." Bowen v. Doyle, 880 F. Supp. 99, 130 (W.D.N.Y 1995) (collecting cases).  Without the ability to enjoin the state court from

6

acting, this court would be unable to exercise its jurisdiction to "preserve the integrity of tribal claims." See White Mountain Apache Tribe v. Smith Plumbing Co., 856 F.2d 1301, 1304 (9th Cir. 1988).

Similarly, the Rooker-Feldman doctrine does not prohibit this court from exercising jurisdiction. "The Rooker-Feldman doctrine prohibits lower federal courts from exercising appellate review of state court judgments." Skit Intern., Ltd. v. DAC Techs. of Arkansas, Inc., 487 F.3d 1154, 1157 (8th Cir. 2007). The Rooker-Feldman doctrine, however, only applies to "cases brought by state-court losers complaining of injuries caused by state-court judgments **rendered before the district court proceedings commenced** and inviting district court review and rejection of those judgments." Exxon Mobil Corp. v. Saudi Basic Indus., 544 U.S. 280, 284, 125 S. Ct. 1517, 161 L. Ed. 2d 254 (2005) (emphasis added). This action seeking to enjoin the state court was filed on March 16, 2007, prior to the entry of judgment on May 29, 2007 by the state court. Because this action was filed before the state court entered judgment, the Rooker-Feldman doctrine does not bar this court from enjoining state court action.

The court also notes that C & W does not challenge the authority of this court to enjoin the state court from adjudicating the underlying action. Accordingly, the court finds that it has the power to enjoin the state court from acting if necessary to protect the rights of OST to govern itself.

7

## II.   Preliminary and Permanent Injunction

This court has interpreted OST's motion to "Stay State Court Proceedings" as a motion for a preliminary and permanent injunction, and pursuant to D.S.D. LR 65.1 has consolidated those motions for purposes of trial.[1]  "The standard for determining whether a permanent injunction should issue is essentially the same as the familiar standard for a preliminary injunction." Randolph v. Rodgers, 170 F.3d 850, 857 (8th Cir. 1999).  Under Dataphase Sys., Inc. v. C L Sys., Inc., 640 F.2d 109, 113 (8th Cir. 1981) (en banc), when ruling on a motion for a temporary restraining order or a preliminary injunction, the court must consider (1) the threat of irreparable harm to the moving party; (2) balancing this harm with any injury an injunction would inflict on other parties; (3) the likelihood of success on the merits; and (4) the public interest.  The only difference in the context of a permanent injunction is that "the movant must show actual success on the merits." Randolph, 170 F.3d at 857 (quoting Amoco Prod. Co. v. Village of Gambell, 480 U.S. 531, 546 n.12, 107 S. Ct. 1396, 94 L. Ed. 2d 542 (1987)).

_____

[1]During oral argument, C & W argued that a question of fact exists as to whether OST waived its sovereign immunity as to the Base and Blotter Project contract, and that more discovery was needed on that issue before this court could determine whether OST was entitled to a permanent injunction.  For purposes of this motion the court will assume, without deciding, that OST waived its sovereign immunity on the Base and Blotter Project contract, and as a result, the court can reach the ultimate issue without the need for further discovery.

### A.    Actual Success on the Merits

OST argues that the state court does not have subject matter jurisdiction to adjudicate this case, and therefore state court action is improper.  C & W argues that because OST waived its sovereign immunity with respect to the contracts at issue, OST has consented to state court jurisdiction.

The right of tribes to govern themselves has long been recognized. See, e.g., Worcester v. State of Georgia, 31 U.S. 515, 8 L. Ed. 483 (1832).  In Williams v. Lee, 358 U.S. 217, 79 S. Ct. 269, 3 L. Ed. 2d 251 (1959), the Supreme Court found that the state courts of Arizona were without power to adjudicate a civil action brought by a non-Indian against an Indian in an action to collect upon a debt that was incurred on a reservation. "Essentially, absent governing Acts of Congress, the question has always been whether the state action infringed on the right of reservation Indians to make their own laws and be ruled by them." Id. at 271.

Nonetheless, Indian tribal sovereignty, especially with regard to power over nonmembers, is limited.[2] See United States v. Wheeler, 435 U.S. 313,

---

[2]While C & W is a South Dakota corporation, it also qualifies for an Indian preference.  At the hearing on this matter, counsel for OST asserted that the tribal affiliation of C & W's stockholder bolstered the argument that the state court lacked jurisdiction over this matter.  "Corporations that are licensed under state law [, however,] usually are considered non-Indian for jurisdictional purposes even if they are Indian owned."  Steven L. Pevar, The Rights of Indians and Tribes 179 (3d ed. 2002); Airvator, Inc. v. Turtle Mountain Mfg. Co., 329

98 S. Ct. 1079, 55 L. Ed. 2d 303 (1978).  The Supreme Court has set forth

two situations in which Indian tribes can exercise jurisdiction over

nonmembers:

> To be sure, Indian tribes retain inherent sovereign power to
> exercise some forms of civil jurisdiction over non-Indians on
> their reservations, even on non-Indian fee lands.  A tribe may
> regulate, through taxation, licensing, or other means, the
> activities of nonmembers who enter consensual relationships
> with the tribe or its members, through commercial dealing,
> contracts, leases, or other arrangements.  A tribe may also
> retain inherent power to exercise civil authority over the
> conduct of non-Indians on fee lands within its reservation when
> that conduct threatens or has some direct effect on the political
> integrity, the economic security, or the health or welfare of the
> tribe.

Montana v. United States, 450 U.S. 544, 565-66, 101 S. Ct. 1245, 67 L. Ed.

493 (1981).

In an en banc decision, the Eighth Circuit held that Montana should

be read in the context of other tribal jurisdiction cases to:

> [E]stablish one comprehensive and integrated rule: a valid tribal
> interest must be at issue before a tribal court may exercise civil
> jurisdiction over a non-Indian or nonmember, but once the
> tribal interest is established, a presumption arises that tribal
> courts have jurisdiction over the non-Indian or nonmember
> unless that jurisdiction is affirmatively limited by federal law.

A-1 Contractors v. Strate, 76 F.3d 930, 939 (8th Cir. 1996).

---

N.W.2d 596 (N.D. 1983).  For the purposes of this order, the court will assume,
without deciding, that C & W should be treated as a non-Indian entity.

In determining which court or courts have jurisdiction in this case, South Dakota's status as a non-Public Law 280 state is also significant. P.L. 280, initially enacted in 1953 and amended in 1968, allows certain states to assume civil jurisdiction over matters occurring on tribal land within a state. See F. Cohen, Handbook on Federal Indian Law 544-546 (2005). South Dakota has not properly adopted P.L. 280, and therefore does not have general civil jurisdiction over activities that occur on tribal land. Rosebud Sioux Tribe v. State of South Dakota, 900 F.2d 1164 (8th Cir. 1990).

In this case, C & W concedes that OST has jurisdiction over C & W. Docket 51 at 10. Further, upon the facts of this case, it is evident that the Oglala Sioux Tribe has a valid tribal interest in this matter. The contracts at issue in this dispute were entered into on the Pine Ridge Indian Reservation, all construction work under the contracts took place on the Pine Ridge Indian Reservation, all the funds for the road work were federal monies allocated by the Bureau of Indian Affairs, one of the parties to the contract was a federally recognized Indian tribe, and the roads subject to construction under the four contracts were Bureau of Indian Affairs' roads that are part of the federal roadway system. Nonetheless, the court stops short of explicitly finding that the Tribal Court has jurisdiction over this matter, as "that examination should be conducted in the first instance in the

11

Tribal Court itself." Nat'l Farmers Union Ins. Cos. v. Crow Tribe of Indians, 471 U.S. 845, 857, 105 S. Ct. 2447, 85 L. Ed. 2d 818 (1985).

C & W argues that the state court has concurrent jurisdiction based upon dispute resolution clauses contained within the contracts.[3]  C & W asserts that under the terms of the contract, OST waived sovereign immunity when it agreed to submit contractual disputes to arbitration.  C & W further asserts that "[t]his clear and explicit waiver, when paired with the clauses regarding arbitration and enforcement of the arbitration award in court, indicate the clear intent of the Tribe to submit to state court jurisdiction." Docket 51 at 11.  Finally, during the hearing on this motion, C & W asserted that the terms of the Construction Industry Arbitration Rules and Mediation Procedures (Arbitration Rules), incorporated by reference in three of the contracts, confer jurisdiction on the state court.

In order to relinquish tribal immunity, "a tribe's waiver must be 'clear.' " C & L Enters., Inc. v. Citizen Band Potawatomi Indian Tribe of Oklahoma, 532 U.S. 411, 121 S. Ct. 1589, 149 L. Ed. 2d 623 (2001).  The

---

[3] The dispute resolution clauses discussed are found only in the Multi-Project Gravel contract, the Manderson to Wounded Knee Project contract, and the Cuny Table Project Contract.  It is C & W's position that OST waived sovereign immunity with respect to the Base & Blotter Project contract and therefore the state court also has jurisdiction over that contract.  For purposes of this motion the court will assume, without deciding, that OST waived sovereign immunity on the Base & Blotter Project contract and will treat it in the same manner as the other three contracts.

12

Eighth Circuit has held that "[b]y designating arbitration in accordance with specified arbitration rules as the forum for dispute resolution, the parties clearly intended a waiver of sovereign immunity with respect to resolving disputes under the contract." Rosebud Sioux Tribe v. Val-U Constr. Co. of South Dakota, Inc., 50 F.3d 560, 562 (8th Cir. 1995).  The dispute resolution clauses explicitly contemplate a limited waiver of OST's sovereign immunity for purposes of the contracts at issue, and the court agrees with C & W's contention that OST waived its sovereign immunity with regard to the three contract clause claims.

But despite this waiver of sovereign immunity, the dispute resolution clauses do not confer jurisdiction on the state court.  The dispute resolution clause states that the decision of the arbitrator is final, "and judgment may be entered in accordance with the applicable law in any court **having jurisdiction thereof**." Docket 48, Ex. F, G, H (Emphasis added).  Standing alone, this clause does not confer jurisdiction upon the state court.

C & W relies heavily upon C & L Enterprises for its assertion that the state court has concurrent jurisdiction.  In C & L Enterprises, a construction company sued an Indian tribe to enforce an arbitration award. 532 U.S. at 414.  The company had entered a construction contract to do work on a tribally owned building, which was not located on tribal land.  Id. at 414-15.  The contract between the tribe and the construction company

13

contained language nearly identical to that found in the instant case, stating that "the award rendered by the arbitrator or arbitrators shall be final, and judgment may be entered upon it in accordance with applicable law in any court having jurisdiction thereof." Id. at 415.

Unlike the instant case, however, the contract at issue in C & L Enterprises also contained a choice-of-law clause which stated that the "contract shall be governed by the law of the place where the Project is located." Id. at 415. Because the project at issue occurred off the reservation and in Oklahoma, Oklahoma law applied. Furthermore, Oklahoma had adopted the Uniform Arbitration Act, which states that the "making of an agreement . . . providing for arbitration in this state confers jurisdiction on the court to enforce the agreement under his act and to enter judgment on an award thereunder." Based on these facts, the Supreme Court held:

> The contract's choice-of-law clause makes it plain enough that a "court having jurisdiction" to enforce the award in question is the Oklahoma state court in which C & L filed suit. By selecting Oklahoma law ("the law of the place where the project is located") to govern the contract, the parties have effectively consented to confirmation of the award "in accordance with" the Oklahoma Uniform Arbitration Act.

Id. See also Smith v. Hopland Band of Pomo Indians, 95 Cal. App. 4th 1, 6-7 (Cal. App. 1. Dist. 2002) (finding that a contract with language "indistinguishable" from the contract language in C & L Enterprises, which

contained a choice-of-law provision selecting California law, conferred jurisdiction upon the California state court).

C & W concedes that the contracts in this case do not contain a choice-of-law provision.  Docket 51 at 11.  Although C & W recognizes this distinguishing factor, it contends that "a choice of law clause selecting state law, however, is not a requirement for finding state court jurisdiction."  Id. C & W argues that because OST "explicitly waived its sovereign immunity regarding any and all disputes arising from three of the contracts, agreed to the arbitration of such disputes and further agreed to enforcement in court, the tribe's waiver of sovereign immunity and consent to state jurisdiction is clear."  Docket 51 at 12.  C & W argues that pursuant to SDCL 21-25A-4 the state court has jurisdiction to enter judgment on the arbitrator's award.[4]

C & W also cites Iowa Management & Consultants, Inc. v. Sac & Fox Tribe of Mississippi in Iowa, 656 N.W.2d 167 (Iowa 2003) in support of its argument that the state court has jurisdiction in this case.  In Iowa Management & Consultants, a tribe engaged the services of a consulting firm to provide assistance with gaming activity on its lands.  656 N.W.2d at 169.  In the contract, the tribe waived sovereign immunity for the purpose of arbitration, and consented to be "sued in any court of competent

---

[4]SDCL 21-25A-4 states that the making of an agreement "providing for arbitration in [South Dakota] confers jurisdiction on the court to enforce the agreement under this chapter and to enter judgment on an award thereunder."

jurisdiction." Id. The contract further stated, "the Tribe hereby waives any right it may possess to require the Consultant to exhaust tribal remedies or appear before any tribal court that may be established by the Tribe." Id. Under these circumstances, and after the federal court had found that it did not have jurisdiction, the Iowa Supreme Court concluded "the consulting firm was left with no place to go other than a state court of general jurisdiction." Id. at 170.

Unlike the case in C & L Enterprises, the contracts at issue here do not contain a choice-of-law clause applying the laws of South Dakota. Furthermore, because South Dakota has not adopted P.L. 280, the laws of South Dakota do not apply to this dispute which occurred in Indian country. Therefore the jurisdictional-granting statute upon which C & W relies, SDCL 21-25A-4, is not properly invoked. Further, unlike in Iowa Management & Consultants, OST has not waived its rights to appear before any tribal court, and accordingly an avenue in tribal court for C & W's claim still exists.

C & W has not cited, and the court is unaware of, any authority which posits that a state court has jurisdiction under facts analogous to this case. Further, the court finds that such an assumption of jurisdiction undermines the authority of tribal courts as set forth in Williams v. Lee and its progeny.

Although the court finds that OST waived its sovereign immunity with respect to at least three of the contracts at issue, the court does not find that a waiver of sovereign immunity alone confers jurisdiction upon the state court. See In re Prairie Island Dakota Sioux, 21 F.3d 302, 305 (8th Cir. 1994) ("[A] waiver of sovereign immunity cannot extend a court's subject matter jurisdiction."). C & W is suing a federally recognized tribe for events that occurred entirely upon tribal land. "State courts lack jurisdiction to hear actions against Indians arising within Indian country." F. Cohen, Handbook on Federal Indian Law 605 (2005). The exercise of state jurisdiction in such situations "would undermine the authority of tribal courts over Reservation affairs and hence would infringe the rights of Indians to govern themselves." Williams, 358 U.S. at 223.

The court is also not persuaded by C & W's argument that the Arbitration Rules provide concurrent state court jurisdiction. The contracts for the Multi-Project Gravel, the Mendelson to Wounded Knee Project, and the Cuny Knee Project all state that "the parties agree to arbitration in accordance with the Construction Industry Arbitration Rules of the American Arbitration Association in effect at the time of this Contract." Docket 48, Ex. F, G, H. In turn, Arbitration Rule R-49(c) states:

> Parties to these rules shall be deemed to have consented that judgment upon the arbitration award may be entered in any federal or state court having jurisdiction thereof.

Docket 61, Att. 1 at 16.

The language in the Arbitration Rules is similar to the language in the dispute resolution clause of the contract, allowing the entry of judgment in any federal or state court "having jurisdiction thereof." Like the dispute resolution clause, Arbitration Rule R-49(c) does not confer jurisdiction in and of itself. Rather, it is predicated upon a court having jurisdiction. As discussed above, the court finds that the state court does not have jurisdiction and therefore the state court cannot enter judgment under Arbitration Rule R-49©.

Accordingly, the court finds that the state court does not have subject matter jurisdiction to adjudicate this case. Because the court finds that OST will succeed on the merits, the first <u>Dataphase</u> factor is resolved in its favor.[5]

---

[5]C & W argues in the alternative that, even if the state court lacks jurisdiction, OST has not shown that it would be successful on the merits because the Oglala Sioux Tribal Court "greatly exceeded its authority" when it vacated the arbitrator's decision. The court does not find this argument to be relevant as to whether or not the state court has subject matter jurisdiction to adjudicate this claim. Whether the Oglala Sioux Tribal Court exceeded its authority is properly addressed by the Supreme Court of the Oglala Sioux Nation.

OST challenges the legality of the order of execution against tribal funds. The court need not reach this issue because this court has found that the state court did not have the power to issue the execution.

**B.     Threat of Irreparable Harm to OST**

OST asserts that if the levy ordered by the state court was executed, it would result in "disastrous financial consequences for the Tribal Government" because the funds are intended to be used for vital public purposes on the Pine Ridge Reservation.  Docket 45-5, ¶¶ 4, 6-7.  OST further asserts that "[t]he existence of the Notice of Levy is harming the Tribe's financial management, and if the Notice is not quashed immediately the tribal administration could face an emergency situation." Id.  C & W asserts that OST will "not suffer any irreparable harm if this Court simply maintains the status quo rather than vacate the state court execution." Docket 51 at 22.

The Notice of Levy issued by the state court has had the effect of freezing funds claimed by the tribe, to the tribe's detriment.  If the tribe is unable to use those funds for public purposes, it may suffer irreparable harm by being rendered unable to provide necessary public services and defaulting on government bonds.  The court therefore finds that the second Dataphase factor weighs in favor of OST.

**C.     Balance of Harms**

C & W argues that this litigation with OST has nearly destroyed C & W's business, and that "[i]f this Court vacates the state court executions and the money currently being held by the State of South Dakota

19

is turned over [to] the tribe and spent by the Tribe, C & W will face substantial difficulty in collecting its judgment if the Court determines that its state court judgment is valid." Because the court finds that the state court is without jurisdiction, there is no danger that the court will determine that the state court judgment is valid. Additionally, as discussed above, allowing the state court's improper exercise of jurisdiction would "would undermine the authority of tribal courts over Reservation affairs and hence would infringe the rights of Indians to govern themselves." Williams, 358 U.S. at 223. The court finds the potential harm to the tribe is significant and that it outweighs C & W's concern regarding its ability to collect a judgment that the state court did not have jurisdiction to enter. Accordingly, the court finds that the third Dataphase factor weighs in favor of OST.

**D.   Public Interest**

C & W asserts that the public interest weighs in its favor because if contractors cannot reliably hold OST to its contractual obligations, the tribe will no longer be able to find entities with which it can do business. C & W's argument is based upon the assumption that adjudication in the tribal courts is insufficient to vindicate any contractual rights it may have, an assumption to which the court is unwilling to subscribe. Further, if an entity doing business with OST prefers to litigate disputes in state court it

20

should include a choice-of-law provision selecting state law, and a forum selection clause selecting state court, in the contract.  The court therefore does not find that the public interest factor weighs in favor of C & W.

Because the court finds that all four <u>Dataphase</u> factors weigh in favor of OST, and further that OST has demonstrated actual success on the merits of its claim that the state court has no jurisdiction to adjudicate this action, it is hereby:

ORDERED that OST's motion to enjoin the state court from adjudicating the contractual disputes at issue in this case (Docket 45) is GRANTED.

IT IS FURTHER ORDERED that OST's motion to vacate the executions issued by the state court (Docket 45) is GRANTED.

IT IS FURTHER ORDERED that OST's motion to vacate the order of the arbitrator (Docket 22) is denied without prejudice.  This motion is not ripe until the Supreme Court of the Oglala Sioux Nation rules on the pending appeal.

IT IS FURTHER ORDERED that C & W's motion to stay (Docket 55) is denied as moot.

IT IS FURTHER ORDERED that C & W's motion for discovery (Docket 58) is granted.

Dated September 10, 2007.

BY THE COURT:

*Karen E. Schreier*

KAREN E. SCHREIER
CHIEF JUDGE